UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL AZIZ ZARIF SHABAZZ,

                                        Plaintiff,

v.                                                              9:20-cv-00057 (LEK/TWD)

BAILEY,

                                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

MICHAEL AZIZ ZARIF SHABAZZ
*Plaintiff, pro se*
P.O. Box 1312
Mount Vernon, NY 10551

LETITIA JAMES                          JOHN F. MOORE, ESQ.
New York State Attorney General        Ass't Attorney General
*Counsel for Defendant*
The Capitol
Albany, NY 12224


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

        This matter has been referred for a report and recommendation by the Honorable

Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(c).  Before the Court is Defendant's motion for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 101.)  For the reasons set forth

below, the Court recommends granting Defendant's motion.

I.    **BACKGROUND**

A.    **Procedural History**

On December 19, 2019, Michael Aziz Zarif Shabazz, a/k/a Michael Hurley (DIN 72-B-0089), commenced this action pursuant to 42 U.S.C. § 1983 in the Southern District of New York ("SDNY") alleging wrongdoings while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Upstate Correctional Facility ("Upstate").  (Dkt. No. 2.)  On January 9, 2020, SDNY Chief District Judge Colleen McMahon issued an Order transferring this action to this District.  (Dkt. No. 3.)  Upon receipt of the action in this District, Judge Kahn granted Plaintiff's application to proceed *in forma pauperis*, accepted the complaint for filing, and ordered only Plaintiff's Eighth Amendment conditions of confinement and deliberate medical indifference claims asserted against Corrections Officer ("CO") Bailey survived *sua sponte* review.  (Dkt. No. 5 at 15.[1])  Defendant filed an answer.  (Dkt. No. 14.)

Following discovery, Defendant filed the instant summary judgment motion on January 6, 2023.  (Dkt. No. 101.[2])  Defendant argues he should be granted summary judgment because Plaintiff did not exhaust his available administrative remedies prior to the filing of this action.  (Dkt. No. 101-4 at 11-17.)  Defendant further argues summary judgment is warranted on the

---

[1]  Page citations herein are those assigned by the Court's electronic filing system, CM/ECF. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

[2]  Defendant's submission includes a Notice of Motion (Dkt. No. 101); Declaration of John F Moore, AAG, with exhibits (Dkt. Nos. 101-1, 101-2); Statement of Material Facts (Dkt. No. 101-3); Memorandum of Law (Dkt. No. 101-4); Appendix of Unreported Cases (Dkt. No. 101-5); Declaration of Defendant Mark Bailey with exhibits (Dkt. No. 101-6); Declaration of Cassie Bayne with exhibits (Dkt. No. 101-7); and Declaration of Rachael Seguin with an exhibit (Dkt. No. 101-8).

merits.  *Id*. at 17-24.  Plaintiff has filed a response.  (Dkt. No. 107.[3])  Defendant filed a reply.

(Dkt. No. 109.)

### B.    Facts

The verified complaint alleges CO Bailey "contaminated and poisoned" Plaintiff's food

during the afternoon shift on October 26, 2016, at Upstate.  (Dkt. No. 2 at 6.)  As a result,

Plaintiff "experienced and suffered unbearable [physical] and extreme stomach pain."  *Id*. at 7.

During subsequent rounds on October 26, 2016, CO Bailey ignored Plaintiff's requests for

emergency medical attention.  *Id*. at 8-9.  Approximately seven hours later—during the "late

night shift"—Plaintiff was provided medical attention.  *Id*. at 9-10.  He stayed overnight in the

prison hospital and was transferred to an outside hospital the next morning.  *Id*. at 9-10.  "Tubes

were . . . used to . . . drain and to remove some of the poison from [Plaintiff's] body," and

Plaintiff later underwent surgery, where "at least a foot of [his] intestines [were] . . . removed."

*Id*.  As a result of the surgery, Plaintiff continues to experience physical pain, as well as

psychological and emotional trauma.  *Id*. at 11.

In his declaration, CO Bailey states that on October 26, 2016, he worked at Upstate in the

11 Building ("Unit 11") from 2:00 p.m. to 10:00 p.m.  (Dkt. No. 101-6 at ¶ 4.)  CO Bailey

categorically denies the material allegations of the complaint.  To that end, CO Bailey states:

> I did not poison, contaminate or otherwise tamper with Plaintiff's
> food on October 26, 2016, or at any time.
>
> I have no hand in preparing food for incarcerated individuals.  I
> have no knowledge of anyone else, including any nurse on duty on
> October 26, 2016, or at any other time, poisoning, contaminating
> or otherwise tampering with Plaintiff's food.

---

[3]  Plaintiff's submission includes a Response (Dkt. No. 107); Memorandum of Law (Dkt. No.
107-1); Exhibits (Dkt. No. 107-2); and Responding Declaration (Dkt. No. 107-3).

> On October 26, 2016, I would have been involved in passing out either meals or juice to the incarcerated individuals on Unit 11. The log annexed as Exhibit A indicates that this occurred at 4:30 p.m. on October 26, 2016 ("Rounds in progress/chow being served"). Rounds would have occurred every half-hour during the shift I worked on October 26, 2016.
>
> At no time during the remainder of my shift on October 26, 2016[,] did Plaintiff advise me that he needed emergency medical attention, or wished to see the nurse. If he had, I would have radioed the request for medical attention to the block nurse, and that would have been reflected in the log annexed as Exhibit A, which it is not.

(Dkt. No. 101-5 at ¶ 5.[4])

CO Bailey also points out:

> If Plaintiff had needed medical care in the hours following the distribution of chow on October 26, 2016, he could have also advised the nurse. According to the Unit 11 log book for October 26, 2016, at 7:30 p.m. the nurse walked the unit to distribute meds and pick up any sick call, and the Plaintiff could have requested medical attention or submitted a sick call at that point. There is no indication in the log that he did so at that time.
>
> The log book does indicate that at 10:00 p.m. on October 26, 2016, Plaintiff was given medical attention from the nurse on duty. ("2200 Rounds/Nurse on block checked on Inmate Hurley 72B008 who complained about food poisoning. After talking to nurse appears OK"). Plaintiff saw the nurse again at 11:10 (2310 entry), and was taken to the infirmary at 11:37 (2337 entry).

*Id*. at ¶¶ 6-7.[5]

During his deposition, Plaintiff admitted it was possible a nurse gave him antacids at 10:05 p.m. "after the shift change" and that he saw the nurse again after 11:00 p.m. and was brought to the infirmary. (Dkt. No. 101-2 at 92-95.) There, he was seen by medical personnel. *Id*. at 96-97. The next morning, on October 27, 2016, he was taken to an outside emergency

---

[4] Internal citations and emphasis omitted; spacing added for ease of reading.

[5] Internal citations and emphasis omitted; spacing added for ease of reading.

room. *Id*. at 97-98. Plaintiff was diagnosed with an intestinal/bowel obstruction at Alice Hyde

Medical Center, and was ultimately treated with surgery. *Id*. at 98-99, 104-06. Plaintiff agreed

he was diagnosed with an intestinal obstruction and that the doctors never used the word

"poisoned." *Id*. at 106-07. Plaintiff was discharged from Alice Hyde Medical Center on

November 5, 2016. *Id*. at 107-08.

Defendant also submits detailed affidavits of the process for exhausting inmate grievance

complaints. (Dkt. Nos. 101-7, 101-8.) Those affidavits, and the records attached thereto, show

there is a grievance procedure available to inmates at Upstate known as the Incarcerated

Grievance Program ("IGP") which involves three steps: (1) complain to the Incarcerated

Grievance Resolution Committee ("IGRC") at the individual facility; (2) appeal to the

Superintendent of the facility; and (3) appeal to the Central Office Review Committee

("CORC"). (Dkt No. 101-3 at ¶¶ 2-10.) Plaintiff was aware of the grievance procedure and as of

May 6, 2020, had appealed 256 grievances to CORC. *Id*. at ¶ 11.

Plaintiff's grievance records at Upstate indicate he filed grievance number UST-59727-

16, alleging that, amongst other things not at issue in this lawsuit, on October 26, 2016, CO

Bailey contaminated Plaintiff's food, after which Plaintiff allegedly became sick, and CO Bailey

ignored Plaintiff's requests for medical attention. *Id*. at ¶ 18. That grievance was denied by the

Superintendent based on a finding of no staff misconduct. *Id*. at ¶¶ 19-20. There is no record of

Plaintiff appealing the grievance to CORC. *Id*. at ¶¶ 21-24.

## II.    DISCUSSION

### A.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit instructs that on summary judgment motions, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Jeffreys*, 426 F.3d at 554 (emphasis in original). In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete

with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).

In applying the summary judgment standard, the district court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

B.    **Local Rule 56.1**

Local Rule 56.1(a) requires a party moving for summary judgment to file and serve a Statement of Material Facts. L.R. 56.1(a). In turn, Local Rule 56.1(b) mandates that the party opposing a motion for summary judgment "file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." L.R. 56.1(b). "Each denial shall set forth a specific citation to the record where the factual issue arises." *Id.*; *see Lee v. City of Troy*, 520 F. Supp. 3d 191, 198

(N.D.N.Y. 2021) ("Because a naked denial of a fact the movant claims to be undisputed would do little to help the Court, the opposing party must support every denial with a citation to record evidence supporting a genuine dispute of material fact.").  "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  L.R. 56.1(b) (emphasis omitted).

Here, Defendant filed and served a 47-paragraph Rule 56.1 Statement of Material Facts. (Dkt. No. 101-3.)  In opposing Defendant's motion, Plaintiff failed to respond to Defendant's Rule 56 Statement of Material Facts.  (*See generally* Dkt. No. 107.[6])  Plaintiff's failure to provide a response in accordance with Local Rule 56.1(b) permits this Court to deem admitted Defendant's properly supported facts that Plaintiff does not specifically controvert.  *See* L.R. 56.1(b); *see also T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").  The Court "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation omitted).

Because Plaintiff did not comply with Local Rule 56.1(b), the facts set forth in Defendant's Rule 56.1 Statement of Material Facts that are supported by record evidence and are uncontroverted by nonconclusory allegations in Plaintiff's verified complaint and sworn opposition submission will be accepted as true.  *See McAllister v. Call*, No. 9:10-CV-610

---

[6]  As pointed out by Defendant, Plaintiff filed a document titled "Responding Declaration" (Dkt. No. 107-3), which on its face appears to be a 13-pargarph declaration in response to the Attorney Declaration of John F. Moore, AAG (Dkt. No. 101-1), not the 47-paragraph Rule 56 Statement (Dkt. No. 101-3).  (Dkt. No. 109 at 6.)

(FJS/CFH), 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) (finding allegations in plaintiff's

verified complaint sufficient to controvert facts in statement of material facts on motion for

summary judgment); *Douglas v. Perrara*, No. 9:11-CV-1353 (GTS/RFT), 2013 WL 5437617, at

*3 (N.D.N.Y. Sept. 27, 2013) ("Because Plaintiff has failed to raise any question of material fact,

the Court will accept the facts as set forth in Defendants' Statement of Facts . . . supplemented

by Plaintiff's verified complaint . . . as true."). As to any facts not contained in Defendant's

Statement of Material Facts, the Court is "required to resolve all ambiguities and draw all

permissible factual inferences" in favor of Plaintiff. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d

Cir. 2003).

### C.       Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available

administrative remedies prior to bringing a federal civil rights action. 42 U.S.C. § 1997e(a). The

exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and regardless of the subject matter of the claim. *See*

*Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532

(2002)), *abrogated on other grounds by Ross v. Blake*, 578 U.S. 632 (2016). Inmates must

exhaust their administrative remedies even if they are seeking only money damages that are not

available in prison administrative proceedings. *Id.* at 675.

In order to properly exhaust an inmate's administrative remedies, the inmate must

complete the administrative review process in accordance with the applicable state rules. *Jones*

*v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). The PLRA

requires "proper exhaustion," which means using all steps of the administrative process and

complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81,

93 (2006). Exhaustion is an affirmative defense, and the burden of proof, at all times, remains

on the defendant. *Coley v. Garland*, No. 9:19-CV-00382 (LEK/ATB), 2023 WL 346242, at *4

(N.D.N.Y. Jan. 20, 2023).

The grievance procedure in New York is a three-tiered process. The inmate must first

file a grievance with the IGRC. N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An

adverse decision of the IGRC may be appealed to the Superintendent of the facility. *Id*. §

701.5(c). Adverse decisions at the Superintendent's level may be appealed to CORC. *Id*. §

701.5(d). Complaints of harassment are handled by an expedited procedure which provides that

such grievances are forwarded directly to the Superintendent, after which the inmate must appeal

any negative determination to the CORC. *Id*. §§ 701.8(h) & (I), 701.5.

"CORC is required to provide, through IGP staff, written confirmation that an appeal has

been received, and if the inmate does not receive such confirmation within forty-five days, he

'should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted

to CORC.'" *Ruiz v. Link*, No. 20-CV-0235, 2022 WL 3020254, at *4 (S.D.N.Y. July 29, 2022)

(quoting 7 N.Y.C.R.R. § 701.5(d)(3)(i)). The IGP requires CORC to respond to an appeal within

thirty days of receipt. 7 N.Y.C.R.R. § 701.5(d)(3)(ii). If CORC has received an appeal and fails

to rule within those thirty days, the inmate is considered to have exhausted his administrative

remedies and may file suit. *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020).

Here, the Court concludes Defendant has satisfied his burden of proof that Plaintiff did

not exhaust his available administrative remedies. (*See* Dkt. Nos. 101-4 at 11-17; 109 at 6-10.)

As detailed above, the record establishes Plaintiff filed a grievance at Upstate following the

alleged incidents at issue, which was assigned grievance number UST-59727-16. (Dkt. No. 101-

3 at ¶ 18.) Given the nature of the grievance, alleging employee misconduct, it was forwarded

directly to the facility Superintendent. *Id*. at ¶ 19. On January 18, 2017, the Superintendent denied grievance UST-59727-16. *Id*. at ¶ 20. The Upstate IGP has no record of Plaintiff filing an appeal to CORC from the Superintendent's decision denying grievance UST-59727-16. *Id*. at ¶ 21. Plaintiff has no records of any appeal of his grievance to CORC and, according to CORC records, Plaintiff did not appeal any grievance to CORC related to any incident occurring on or about October 26, 2016. *Id*. at ¶ 22-23. Plaintiff's failure to appeal grievance UST-59727-16 to CORC means Plaintiff failed to properly exhaust his administrative remedies before filing this action.

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 578 U.S. at 642. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id*. The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

The record establishes none of the *Ross* exceptions are applicable here. Plaintiff, who is well versed in the IGP, has fully exhausted administrative grievances to CORC on 256 other occasions. (Dkt. No. 101-3 at ¶ 11.) "This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the first two exceptions identified under *Ross* are not applicable here." *Smith v. Jaynes*, No. 9:18-CV-

1107 (DNH/DJS), 2022 WL 686627, at *3 (N.D.N.Y. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 685488 (N.D.N.Y. Mar. 8, 2022) (citing *Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018)); *see also Coley*, 2023 WL 346242, at *5 (plaintiff's testimony he had successfully filed and appealed grievances in the past at Upstate suggested DOCCS grievance process was not a "dead end" or "incapable of use") (citing *Lurch v. Bui*, No. 19-CV-895 (DNH/DJS), 2020 WL 8450543, at *5 (N.D.N.Y. Dec. 8, 2020), *report and recommendation adopted*, 2021 WL 392486 (N.D.N.Y. Feb. 4, 2021)).

Nor has Plaintiff raised any triable question of fact as to the applicability of the third *Ross* exception. Plaintiff implies that he attempted to appeal his grievance to CORC but that it was not properly forwarded. (*See, e.g.*, Dkt. No. 107 at 8 ("I appealed all adverse grievances and/or prison authorities never received same."); Dkt. No. 101-2 at 124 (testifying he "obviously appealed" the grievance to CORC and "this civil complaint is a result of them ignoring and not addressing the issue").) His conclusory allegations in this regard are, however, insufficient to raise a question of fact. *Lurch*, 2020 WL 8450543, at *5; *see Blake v. Porlier*, No. 9:18-CV-1008 (DNH/CFH), 2019 WL 7484052, at *5 (N.D.N.Y. Oct. 4, 2019) ("Courts within the Second Circuit have continuously held that 'mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations.'") (quoting *Rodriguez v. Cross*, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *5 (N.D.N.Y. May 9, 2017)); *Artis v. Dishaw*, No. 9:14-CV-1116 (MAD/ATB), 2016 WL 11266599, at *7 n.13 (N.D.N.Y. Sept. 12, 2016) (finding the plaintiff's failure to exhaust was not excusable, in part, because while the plaintiff "state[d] that some grievances were destroyed . . . he ha[d] not submitted any copies of these grievances, nor d[id] he specify

when he attempted to file them"), *report and recommendation adopted*, 2017 WL 1076343 (N.D.N.Y. Mar. 22, 2019); *see also Haywood v. Palmer*, No. 21-cv-7277 (NSR), 2023 WL 2711555, at *5 (S.D.N.Y. Mar. 30, 2023) ("[A]lthough Plaintiff alleges that 'the grievance process is broken' and that it is [the facility's] 'usual practice' not to respond to grievances, these claims are too vague and conclusory to excuse Plaintiff's failure to exhaust.").

Further, the record is devoid of any indication that Plaintiff followed up with the Upstate IGP supervisor "to confirm that the appeal was filed and transmitted to CORC" when he did not receive written confirmation within forty-five days that his appeal was received. 7 N.Y.C.R.R. § 701.5(d)(3)(i); *see, e.g.*, *Simpson v. Price*, No. 9:19-CV-1413 (MAD/ATB), 2021 WL 7367083, at *9 (N.D.N.Y. Dec. 29, 2021) (granting summary judgment on exhaustion grounds where plaintiff "provided no specifics regarding when the grievances were written, their content, or the steps he took to provide them to an officer to send to the grievance office" and there was no documentary evidence to corroborate the fact plaintiff attempted to file a grievance, such as follow-up correspondences).

There is no allegation, nor is there any showing, that Defendant or prison officials affirmatively or misleadingly prevented Plaintiff from filing the appeal to CORC. *See, e.g.*, *Smith*, 2022 WL 686627, at *4 ("For an inmate with Plaintiff's experience with the grievance process, this failure to address the allegedly missing grievance belies any claim that prison administrators' "machination, misrepresentation, or intimidation" denied Plaintiff the ability to file a grievance against Jaynes.").

In short, "[g]iven the lack of evidence that Plaintiff's appeal to CORC was ever filed, or ever followed up on, it is not that the full scope of administrative remedies was not available to Plaintiff – rather, Plaintiff failed to fully exhaust the administrative remedies available to him."

*Houston v. Coveny*, No. 14-CV-6609, 2020 WL 2494439, at *3 (W.D.N.Y. May 14, 2020); *see*

*Litchmore v. Williams*, No. 11-CV-7546, 2013 WL 3975956, at *6 (S.D.N.Y. Aug. 5, 2013) (no

"sufficient basis in the record to find that administrative remedies were unavailable" where,

among other things, there was "no evidence here that the plaintiff's appeal was actually mailed,

intercepted, or ignored" and "DOCCS has no record of any appeal filed with CORC").

      As a final matter, to the extent Plaintiff appears to argue "special circumstances" justify

his failure to comply with the exhaustion, (*see* Dkt. No. 107 at 5-11), the Supreme Court made it

clear in *Ross* that courts may not excuse a prisoner's failure to exhaust because of "special

circumstances." *Ross*, 578 U.S. at 640. "'[M]andatory exhaustion statutes like the PLRA

establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*,

656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639).

      Accordingly, for the foregoing reasons, the Court finds Plaintiff has not raised an issue of

material fact as to the availability of administrative remedies.  As a result, the Court recommends

granting Defendant's motion for summary judgment because Plaintiff has failed to exhaust his

available administrative remedies under the PLRA.  As such, the Court does not reach

Defendant's alternative arguments.  *See, e.g.*, *Coley*, 2023 WL 346242, at *6 (declining to

address alternative arguments where summary judgment was warranted on exhaustion grounds);

*White v. Dishaw*, No. 9:14-CV-0002 (GLS/DJS), 2017 WL 4325770, at *4 (N.D.N.Y. June 20,

2017) (same), *report and recommendation adopted*, 2017 WL 4326074 (N.D.N.Y. Sept. 27,

2017).

## III.    CONCLUSION

      After carefully reviewing the record, the parties' submissions, and the applicable law, and

for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 101) be

**GRANTED** because of Plaintiff's failure to exhaust available administrative remedies; and it is

further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on all

parties in accordance with Local Rules, along with copies of the unpublished decisions cited

herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to

file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of

the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS</u>**

**<u>WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: June 28, 2023
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7]  If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date of the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).